# Supreme Court of Florida

---

No. SC2024-1274

---

**TRACE ELEMENTS, INC.,**
Petitioner,

vs.

**NADJA MACKENSEN, et al.,**
Respondents.

July 2, 2026

MUÑIZ, J.

Florida Rule of Civil Procedure 1.442 governs "all proposals for settlement authorized by Florida law," including those made under the offer of judgment statute, section 768.79. Rule 1.442(c)(3) addresses joint proposals for settlement, that is, proposals made by or to multiple parties. It says that "[a] joint proposal must state the amount and terms attributable to each party." In the decision under review, the Fourth District Court of Appeal held that this apportionment rule does not apply to a "joint proposal regarding a unified, single claim." *Mackensen v. Trace Elements, Inc.*, 388 So.

3d 815, 817 (Fla. 4th DCA 2024). That holding expressly and directly conflicts with the decision of the Second District Court of Appeal in *Cobb v. Durando,* 111 So. 3d 277 (Fla. 2nd DCA 2013). Consistent with our precedents, which mandate strict enforcement of the rule 1.442(c)(3) apportionment requirement, we now quash the Fourth District's decision below and approve the Second District's decision in *Cobb.*

I

Wolfgang and Nadja Mackensen, a married couple, contracted with professional design company Trace Elements to oversee renovations of their vacation rental property in Vero Beach. After Trace Elements prematurely terminated performance, the Mackensens sued for breach of contract and unjust enrichment. The company countersued for breach of contract and tortious interference with a business relationship.

Before trial, the Mackensens served a proposal for settlement[1] to Trace Elements, stating they were willing to accept a lump sum

---

1. As we will explain, the Mackensens eventually sought attorney's fees under section 768.79, Florida Statutes. While section 768.79 uses the term "demand for judgment" to refer specifically to a settlement offer made by a plaintiff to a defendant,

of $10,000 in full settlement of the action.  In relevant part, their

proposal said:

> The Plaintiffs/Counter-Defendants offer to accept a total sum of TEN THOUSAND DOLLARS and 00/100 ($10,000.00) from the Defendant/Counter-Plaintiff in full settlement of this action and, upon acceptance and clearance of the payment, the Plaintiffs/Counter-Defendants will file a voluntary dismissal, with prejudice, of the Complaint filed against the Defendant/Counter-Plaintiff and the Defendant/Counter-Plaintiff will file a voluntary dismissal, with prejudice, of the Countercomplaint filed against the Plaintiffs/Counter-Defendants.

*Mackensen*, 388 So. 3d at 817.

Trace Elements rejected the proposal, the case went to trial,

and the jury ultimately awarded the Mackensens $41,273.70 on

their breach of contract claim.[2]  The Mackensens moved for

attorney's fees and costs under section 768.79.  But the trial court

denied the motion after concluding that their settlement proposal

was invalid for failure to comply with rule 1.442(c)(3)'s

---

rule 1.442 refers to a settlement offer made by either a plaintiff or a defendant as a "proposal for settlement."  This opinion will use the term "proposal for settlement" to refer to the Mackensens' offer.

2.  Trace Elements received nothing on its competing breach of contract claim, and the trial court granted the Mackensens a directed verdict on Trace Elements' claim for tortious interference with a business relationship.

apportionment requirement.

The Mackensens appealed to the Fourth District, which reversed and remanded for an award of attorney's fees. *Id.* at 816. The district court acknowledged that rule 1.442(c)(3) requires joint proposals to state the amount and terms attributable to each party. *Id.* at 816-17. Nevertheless, it held that the Mackensens' settlement proposal "was a joint proposal regarding a unified, single claim, which did not require apportionment to comply with rule 1.442." *Id.* at 817.

The Fourth District's decision expressly and directly conflicts with the Second District Court of Appeal's decision in *Cobb*. There, married homeowners served an unapportioned settlement proposal to a roofing contractor, seeking to settle their unified, single breach of contract claim. 111 So. 3d at 277. The Second District held that the joint proposal was invalid under rule 1.442(c)(3) for its failure to apportion the proposal between the plaintiff homeowners. *Id.* at 278.

We accepted jurisdiction after Trace Elements sought our review of the Fourth District's decision in *Mackensen*. *See* art. V, § 3(b)(3), Fla. Const.

- 4 -

As we have noted, this case involves section 768.79, the statute under which the Mackensens sought attorney's fees, and rule 1.442, which implements the statute. Before turning to the parties' arguments, we briefly describe the relevant contents of the statute and the rule.

Section 768.79 "provides a sanction against a party who unreasonably rejects a settlement offer" and "generally creates a right to recover reasonable costs and attorney['s] fees when a party has satisfied the terms of the statute and rule." *Att'ys' Title Ins. Fund, Inc. v. Gorka*, 36 So. 3d 646, 649 (Fla. 2010). The statute provides in relevant part:

> (1) In any civil action for damages filed in the courts of this state, . . . [i]f a plaintiff files a demand for judgment which is not accepted by the defendant within 30 days and the plaintiff recovers a judgment in an amount at least 25 percent greater than the offer, she or he shall be entitled to recover reasonable costs and attorney's fees incurred from the date of the filing of the demand.

§ 768.79(1), Fla. Stat. (2022).

> To be valid under the statute, a proposal must:
>
> (a) Be in writing and state that it is being made pursuant to this section.

(b) Name the party making it and the party to whom it is being made.
(c) State with particularity the amount offered to settle a claim for punitive damages, if any.
(d) State its total amount.

§ 768.79(2), Fla. Stat.  When the specified conditions are met, a party is entitled to fees under the statute, unless the trial court determines that the proposal for settlement "was not made in good faith."  *See* § 768.79(1), (8)(a), Fla. Stat.

While section 768.79 creates the substantive right to an attorney's fees award, rule 1.442 "provides the method and means of implementing this right by outlining the required form and content of a proposal for settlement."  *Gorka*, 36 So. 3d at 649.  Subdivision (c)(3) of the rule says:

> A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal.  ***A joint proposal must state the amount and terms attributable to each party.***

Fla. R. Civ. P. 1.442(c)(3) (emphasis added).  We have said that this apportionment rule implements the textual requirement of section 768.79(2)(b) that a proposal "name the party making it and the party to whom it is being made."  *See Kuhajda v. Borden Dairy Co. of Ala., LLC*, 202 So. 3d 391, 394-95 (Fla. 2016); *Gorka*, 36 So. 3d

at 650 ("Reading the plain language of the statute, we recognize[] that the reference to 'party' in the singular in section 768.79(2)(b) indicate[s] the intent of the Legislature that an offer must specify the amount attributable to each party." (citing *Allstate Indem. Co. v. Hingson*, 808 So. 2d 197, 199 (Fla. 2002))).

## III

### A

Trace Elements argues that the Fourth District erred by creating an ad hoc exception to rule 1.442(c)(3) for "a joint proposal regarding a unified, single claim." *Mackensen*, 388 So. 3d at 817. We agree. The Mackensens' settlement proposal was invalid under the text of the rule. And our precedents, which have involved myriad factual scenarios, have consistently mandated strict enforcement of the rule.

Recall that the text of rule 1.442(c)(3) says that "[a] joint proposal must state the amount and terms attributable to each party." In *Willis Shaw Express, Inc. v. Hilyer Sod, Inc.*, 849 So. 2d 276, 278-79 (Fla. 2003), our Court held that the term "joint proposal" in the rule simply means a proposal made by or to multiple parties. We concluded that "the plain language of rule

- 7 -

1.442(c)(3) requires that offers of judgment made by multiple offerors must apportion the amounts attributable to each offeror." *Id.*; *see also Pratt v. Weiss*, 161 So. 3d 1268, 1271 (Fla. 2015) (same).

Our precedents applying rule 1.442(c)(3) have consistently emphasized the need for strict enforcement of the rule. We have invalidated an unapportioned settlement offer presented by two plaintiffs to one defendant, *see Willis Shaw*, 849 So. 2d at 277; an unapportioned settlement offer presented by one plaintiff to two defendants, *see Lamb v. Matetzschk*, 906 So. 2d 1037, 1040 (Fla. 2005); an unapportioned settlement offer presented by two defendants to one plaintiff, *see Pratt*, 161 So. 3d at 1273; and even an unapportioned settlement offer presented by one plaintiff to one defendant that sought to resolve claims involving additional parties not named in the proposal, *see Audiffred v. Arnold*, 161 So. 3d 1274, 1280 (Fla. 2015).

To identify a "joint proposal" subject to the rule 1.442(c)(3) apportionment requirement, we have never relied on factors beyond the multiplicity of the parties. The parties' relationships, theories of liability, or the number or nature of claims have been irrelevant to

our application of the rule. Nor have we conditioned enforcement of the rule on whether doing so aligned with the purposes of section 768.79. Predictable and consistent application of the rule has created a framework on which parties governed by the rule can rely, without having to make case-by-case guesses about whether an underlying statutory purpose will excuse compliance with the rule.

In *Lamb*, for example, we held that the plain language of rule 1.442(c)(3) "mandates that offers of settlement be differentiated between the parties, even if a party's liability is purely vicarious." 906 So. 2d at 1038. Our Court was unmoved by an argument about the difficulty of apportioning a settlement proposal in that circumstance. *Id.* at 1041. Instead, we insisted on strict enforcement, observing that "[t]he rule makes no distinction between multiple plaintiffs and multiple defendants, nor does it make any distinction based on the theory of liability." *Id.* at 1042. In a concurrence expressing concern that the Court's holding would not "foster the primary goal of the rule and section 768.79," Justice Pariente explained that the Court had interpreted the rule "to require differentiated offers of judgment, regardless of whether the offer emanates from or is directed to joint parties who have a

common interest." *Id.* at 1042-43 (Pariente, C.J., specially concurring).

Similarly, *Pratt* involved a settlement offer tendered by a limited partnership and one of its partners who were the defendants in the case and jointly owned the medical center involved in the underlying negligence action. *Pratt*, 161 So. 3d at 1270. After concluding that each entity was a distinct party in the case, we found their offer to be a joint proposal, and we strictly enforced the rule. *Id.* at 1273. We reasoned that, even if "any alleged liability of [the two defendants] could be viewed as coextensive, this does not constitute an exception to the apportionment requirement." *Id.* at 1272. "While it may have been difficult for [the two entities] to apportion the settlement amount based on their purported liability, and even though they could have later apportioned their contribution had [the plaintiff] accepted the offer," our Court added, "these are not recognized legal elements to disregard or circumvent the rule that requires apportionment of a settlement amount where a proposal is presented by multiple parties." *Id.* at 1273. We went so far as to say: "Even where no logical apportionment can be made, it is nonetheless required where more than one offeror or offeree is

- 10 -

involved." *Id.* at 1272-73.

It is against this backdrop of text and precedent that we must evaluate the Mackensens' settlement proposal here. There is no question that it was a joint proposal: it came from both Wolfgang and Nadja Mackensen, each a distinct plaintiff. Indeed, as noted above, the Fourth District itself described the proposal as a "joint proposal." *Mackensen*, 388 So. 3d at 817. It is also undisputed that the proposal was unapportioned: it offered to accept from Trace Elements a lump sum of $10,000, without allocating distinct amounts to Wolfgang and Nadja individually. The Mackensens' proposal was invalid under rule 1.422(c)(3), and our precedents call for strict enforcement of the rule.

B

The Mackensens do not dispute that their settlement offer was a "joint proposal," and they make no effort to argue that their offer complied with the plain language of rule 1.442(c)(3) or our precedent. Nor do the Mackensens maintain that it would have been impossible for them to comply with the rule. Instead, they defend the Fourth District's decision on the ground that it would be "nonsensical" to apply the rule on these facts and that "strict

construction of a procedural rule is improper where it defeats the purpose of section 768.79." The Mackensens maintain that enforcing the requirements of rule 1.442(c)(3) in their case would elevate form over substance.[3]

As we have explained, our Court's precedents have not conditioned enforcement of rule 1.442(c)(3) on whether, given the facts at issue in each case, doing so would help or hurt the goals or purposes underlying section 768.79 and the rule. In our view, parties are entitled to rely on our consistent application of the rule, especially because section 768.79, which the rule implements, is a "penalty statute." *Coates v. R.J. Reynolds Tobacco Co.*, 365 So. 3d 353, 355 (Fla. 2023).

In their search for authority to support their argument against enforcing rule 1.442(c)(3) here, the Mackensens rely primarily on

---

3. Without offering explanation or support, the Mackensens also suggest that apportionment of a claim involving property they jointly own as tenants by the entireties is "impractical." We fail to see why the Mackensens' joint ownership of the vacation rental property alters the requirement of strict compliance with rule 1.442(c)(3), and we are persuaded by the Second District's rejection of this very argument in *Cobb* and again in *Watkins v. Corbett*, 2026 WL 816637 (Fla. 2d DCA Mar. 25, 2026). *See Cobb*, 111 So. 3d at 278; *Watkins*, 2026 WL 816637, at *2.

- 12 -

our decision in *Kuhajda,* but that case is inapposite. *Kuhajda* involved a different provision, rule 1.442(c)(2)(F), which requires a settlement proposal to state whether it includes attorney's fees. We excused noncompliance with that requirement in *Kuhajda* because the plaintiff/offeror had not sought attorney's fees in her complaint. 202 So. 3d at 393. Essential to our reasoning was that the attorney's fee rule "does not implement a substantive requirement of section 768.79." *Id.* at 395. Our opinion in *Kuhajda* expressly distinguished a list of cases, including *Willis Shaw, Gorka, Lamb,* and *Pratt,* where we had imposed "strict enforcement" of rule 1.442 "in contexts in which the provisions of the rule implemented the substantive requirements of section 768.79." *Id.* at 394-95. Thus, *Kuhajda* is of no help to the Mackensens because, as this Court has already determined, rule 1.442(c)(3) implements a substantive requirement of the statute.

The Mackensens also stress that their settlement proposal was not ambiguous—a point that Trace Elements does not dispute. Under our precedents, though, that does not save a settlement proposal that otherwise fails to comply with the rule. As the First District Court of Appeal has observed, our Court "has made the test

- 13 -

strict compliance, not the absence of ambiguity." *R.J. Reynolds Tobacco v. Ward*, 141 So. 3d 236, 238 (Fla. 1st DCA 2014).

C

We recognize the force of the Mackensens' arguments as a matter of practicality and common sense under the specific facts of their case. We also acknowledge that strict application of rules can sometimes be in tension with the purposes or policies underlying those rules. *Cf. Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283-84 (7th Cir. 1990) (Easterbrook, J., dissenting) ("Rules have their flaws; loopholes and overbreadth, both producing unpalatable outcomes in the event of unanticipated circumstances, are among them. But whether to have rules (flaws and all) or more flexible standards (with high costs of administration and erratic application) is a decision already made by legislation."). Nonetheless, our precedents under rule 1.442(c)(3) reflect a judgment that, overall, the benefits of strict enforcement outweigh whatever would be gained by making ad hoc exceptions to address overbreadth in the rule.

We decline in this case to contort the existing rule's text and our precedents to reward a party that disregarded those authorities

and now complains that compliance would have been impractical. To the extent this case has illuminated a potential flaw in rule 1.442(c)(3), we believe the appropriate course is to review the rule and, if a change is warranted, amend its text. That is the path we followed after our Court's decision in *Lamb*, which led to a rule amendment to address cases involving parties with only vicarious liability. *See In re Amends. to Fla. Rules of Civ. Proc.*, 52 So. 3d 579 (Fla. 2010) (adopting rule 1.442(c)(4)).

IV

We hold that rule 1.442(c)(3) requires apportionment of a joint proposal regarding a unified, single claim. We therefore quash the Fourth District's decision in *Mackensen*, and we approve the Second District's decision in *Cobb* to the extent it is consistent with our decision today. The cause is remanded to the Fourth District for further proceedings consistent with our opinion.

It is so ordered.

COURIEL, C.J., and LABARGA and GROSSHANS, JJ., concur.
SASSO, J., dissents with an opinion, in which FRANCIS and TANENBAUM, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

- 15 -

SASSO, J., dissenting.

This case presents the issue of whether an offer of settlement submitted by married homeowners for "a unified, single claim for damages" requires apportionment. The Mackensens are a legally recognized unit—married couple—and their complaint sought two claims of damages based on a unified theory of liability. They were countersued as a unit, where Trace Elements likewise sought undifferentiated damages based on allegations that did not distinguish husband from wife in any way. No party disputes that it would be impossible to distinguish the damages sought by the Mackensens. Indeed, the verdict form asked the jury: "What are Nadja Mackensen and Wolfgang Mackensens' damages as a result of the failure or prohibited conduct?" The jury awarded the Mackensens an undifferentiated award. Even so, the majority concludes that the Mackensens' offer of settlement, which did not apportion the claim between husband and wife, was defective and legally unenforceable. It reaches this decision by extending broad language from existing precedents to this unique scenario. I do not think that step is required because this case presents a legitimate distinction that we have not yet considered. As a result, I

respectfully dissent.

## I

Contrary to both Petitioner's and the majority's position, precedent does not require that we disapprove of the Fourth District's decision. Petitioner characterizes this Court's precedents as creating a "bright-line rule with no exceptions" that damages must be apportioned any time there are two or more parties. The majority gives credence to this position. Below, I explain why neither our precedent nor the logic underlying our precedent requires that conclusion.

## A

This case presents a distinct set of facts that our precedents have not yet considered. This is significant because only holdings have precedential effect. *State v. Yule*, 905 So. 2d 251, 259 & n.10 (Fla. 2d DCA 2005) (Canady, J., specially concurring) ("The doctrine of stare decisis, of course, does not require that we treat every broad statement of principle made in a prior decision as establishing a binding rule."). And "[a] holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the

- 17 -

case, and (3) lead to the judgment." *See Pedroza v. State*, 291 So. 3d 541, 547 (Fla. 2020) (quoting *Yule*, 905 So. 2d at 259 n.10); *see also Cusick ex rel. Cusick v. City of Neptune Beach*, 765 So. 2d 175, 177 (Fla. 1st DCA 2000) ("[T]he doctrine of stare decisis applies a rule of law established in an earlier case only to a later case that involves a factual situation similar to that in the former." (*citing Forman v. Fla. Land Holding Corp.*, 102 So. 2d 596, 598 (Fla. 1958))).

The majority disagrees, starting with the proposition that we have already held in *Willis Shaw Express, Inc. v. Hilyer Sod, Inc.*, 849 So. 2d 276, 278-79 (Fla. 2003), that a "joint proposal" is any proposal submitted by two people. But *Willis Shaw* did not sweep so broadly. There we addressed a conflict as applied to a proposal for settlement made by (1) a plaintiff seeking to recover damages incurred to its tractor-trailer and (2) a plaintiff seeking to recover damages for the loss of personal property that he stored in the tractor. *Id.* at 277. We held that "an offer from multiple plaintiffs must apportion the offer among the plaintiffs." *Id.* at 279. But we made that statement against the specific factual backdrop of the case and did not address whether a proposal by unified plaintiffs

with an undifferentiated claim of damages also required apportionment. As a result, *Willis Shaw* does not control the outcome of this case because our reference to "multiple plaintiffs" arose out of meaningfully different facts.

The remainder of the cases cited by the majority also present factually distinct scenarios. And contrary to the majority's characterization, the resolution of those cases appears at least partially based on the theories of liability and the legal relationship between the parties. For example, *Lamb v. Matetzschk* considered the issue of a joint proposal to two defendants, where one defendant was only vicariously liable. 906 So. 2d 1037, 1039 (Fla. 2005). In *Pratt v. Weiss*, we concluded that a single offer made by separate legal entities was a joint proposal even if part of their liability was coextensive. 161 So. 3d 1268, 1272 (Fla. 2015). In support of that conclusion, we highlighted that the plaintiff pursued separate claims against each defendant in separate counts of the complaint. *Id.* We also emphasized that Florida law treated the two defendants as distinct legal entities. *Id.* Likewise, *Audiffred v. Arnold* involved a married couple that pursued separate claims of damages following an automobile accident. 161 So. 3d 1274, 1275 (Fla. 2015). The

- 19 -

wife sought damages for her injuries and for vehicle repairs, while the husband sought damages for loss of consortium. *Id.* Like we did in *Pratt*, we highlighted that "[t]he complaint in this case involved separate claims" and that the proposal would settle claims by each of the plaintiffs without identifying "what portion of the amount offered would be applicable to" the wife versus the husband. *Id.* at 1279-80.

Because none of these prior cases involved a unified claim for undifferentiated damages by homeowner spouses, they do not dictate a specific outcome in this case. *See Pratt* 161 So. 3d at 1274 (Canady, J. dissenting) (concluding there was no conflict with cases that hold apportionment of a settlement amount is required where an offer of judgment is made by or to multiple parties where the offer at issue was made on behalf of the single hospital entity allegedly responsible and therefore was distinguishable based on the facts).

**B**

Even though the cases considered by the majority arose under materially different factual scenarios, the majority adds that the underlying logic of our precedent requires we quash the Fourth

- 20 -

District's decision. The majority says that because our precedent requires strict construction untethered from logical application or purpose, we must insist on "strict compliance" here. But our precedent has always rooted our adherence to strict compliance in a purpose-driven justification that is absent from this factual scenario.

We articulated this purpose-drive justification mostly clearly in *Audiffred*, where we highlighted "[t]he purpose of the apportionment requirement in the rule is to allow each offeree to evaluate the terms and the amount of the offer as it pertains to him or her." 161 So. 3d at 1278 (quoting *Pratt*, 161 So. 3d at 1272). We concluded that the offer in that case was "fatally ambiguous" and invalid because it "lacked sufficient clarity to permit [the defendant] to reach an informed decision with regard to the settlement amount against the pending claims by [the plaintiffs]." *Id.* at 1280 (citing *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006), and Fla. R. Civ. P. 1.442(c)(2)(C)). That same day we released our opinion in *Pratt*—the worst offender because it required apportionment even when "no logical apportionment can be made." 161 So. 3d at 1272-73. In that case, we reiterated that "[t]he

purpose of the apportionment requirement in the rule is to allow each offeree to evaluate the terms and the amount of the offer as it pertains to him or her."  *Id.* at 1272 (citing *Willis Shaw*, 849 So. 2d at 278).

A decade earlier, we cited this same justification for our decision in *Lamb,* noting that "[t]o further the statute's goal, each party who receive[s] an offer of settlement is entitled . . . to evaluate the offer as it pertains to him or her."  906 So. 2d at 1041 (alterations and omission in original) (quoting *Allstate Indem. Co. v. Hingson,* 808 So. 2d 197, 199 (Fla. 2002)).  We invalidated that proposal because "[e]ach defendant should be able to settle the suit knowing the extent of his or her financial responsibility."  *Id.* at 1040.  That purpose-driven logic is also apparent in *Attorneys' Title Insurance Fund, Inc. v. Gorka* when we restated the purpose of the apportionment rule and concluded that "a proposal that conditions acceptance upon the mutual agreement of both parties and prohibits either party from independently evaluating and accepting the amount offered violates these principles."  36 So. 3d 646, 651 (Fla. 2010).

The Mackensens' offer does not produce the concerns

articulated in *Pratt, Lamb, Gorka*, and *Audiffred*. The Mackensens'

claim for damages is both factually and legally undifferentiated.

*See Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 53 (Fla.

2001) ("[P]roperty held by husband and wife as tenants by the

entireties belongs to neither spouse individually, but each spouse is

seized of the whole."). Under these circumstances, there is no risk

that Trace Elements will not be able to accurately evaluate and

accept the offer.

## II

Because none of our precedents address the unique facts of

this case, we are faced with the decision of either extending

precedent or drawing a line. I think we should do the latter for

several reasons.

First, our insistence on "strict construction" of rule 1.442 rests

on erroneous analysis. In support of our adherence to strict

construction, we have said that because rule 1.442 implements an

attorney's fees provision that is in derogation of common law, the

derogation canon should be equally applied to our interpretation of

section 1.442. *See, e.g., Willis Shaw*, 849 So. 2d at 278. That

analysis is faulty because there is no justification for applying the

derogation canon to a rule of procedure. *See Kuhajda v. Borden Dairy Co. of Ala., LLC*, 202 So. 3d 391, 396 (Fla. 2016) ("A procedural rule should not be strictly construed to defeat a statute it is designed to implement."). Instead, to the extent we require a substantive canon to aid our interpretation, the applicable rule of construction is specified in rule 1.010. *See Campbell v. Goldman*, 959 So. 2d 223, 228 (Fla. 2007) (Bell, J., concurring in result only) (stating that to the extent there is ambiguity in rule 1.442, the standard of construction stated in rule 1.010 would apply, not the derogation canon); Fla. R. Civ. P. 1.010 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every action."). The derogation canon simply has no place in the interpretation of rule 1.442. *See, e.g., Goldman v. Campbell*, 920 So. 2d 1264, 1270 (Fla 4th DCA 2006) (Farmer, J., concurring specially) ("[T]he derogation canon—created for *statutory* changes in substantive common law—has no logical purpose or use in the interpretation of mere rules of procedure.").

Second, both the rule and statute have undergone amendments since we decided many of the cases that the majority cites. This signals both a rejection of our application of the law to

specific facts and the logic underlying those decisions. For example, following *Lamb*, we amended rule 1.442 to allow the types of proposals that case rejected. *In re Amends to Fla Rules of Civ. Proc.*, 52 So. 3d 579, 588 (Fla. 2010). Then in 2022, the Legislature amended section 768.79 to include subsection (6), which allows joint settlements to be conditioned on mutual acceptance in a specific circumstance. § 768.79(6), Fla. Stat. (2022). We followed up with a rule amendment, also eliminating our requirement that proposals for settlement include non-monetary terms. *See In re Amends. to Fla. Rule of Civ. Proc. 1.442*, 345 So. 3d 845, 846 (Fla. 2022). Each of those developments, in my view, counsels against overreading our precedent and any continued adherence to the faulty logic underlying those decisions.

Third, our more recent precedents have attempted to reorient this Court to its proper endeavor: giving effect to the substantive requirements of section 768.79. *See Wheaton v. Wheaton*, 261 So. 3d 1236, 1244 (Fla. 2019) (holding that even if procedural rule applied to proposals for settlement, offeror's failure to comply with the rule would not render the proposal unenforceable because the proposal complied with the substantive requirements of section

768.79); *Kuhajda*, 202 So. 3d at 395-96 (noting that, in interpreting this rule, we should be mindful that it is a procedural rule, the only purpose of which is to implement the substantive requirements of section 768.79). This shift toward honoring the substantive law we are tasked with interpreting also furthers the judicial policy underlying our rules of procedure. *See generally* Fla. R. Civ. P. 1.010; *Nichols*, 932 So. 2d at 1078 (acknowledging the purpose of proposals for settlement is "to end judicial labor, not create more" (quoting *Nichols v. State Farm Mut.*, 851 So. 2d 742, 746 (Fla. 5th DCA 2003))).

Each of those factors favors a narrow reading of our precedent. Viewed through that lens, the question of whether the Mackensens' proposal for settlement is enforceable is an easy one. The proposal satisfies the requirements of section 768.79, Florida Statutes, which lays out the substantive law the Mackensens seek to enforce. As for rule 1.442, it says "[a] proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal must state the amount and terms attributable to each party." Fla. R. Civ. P. 1.442(c)(3). Interpreted reasonably, the Mackensens' offer satisfies the rule

because it conveys that the full amount of damages is equally attributable to both of them. So, even if the Mackensens' proposal is considered a "joint" proposal under the rule,[4] the rule does not prohibit a married couple with an undifferentiated claim for damages from presenting a unified offer. *See Gorka*, 36 So. 3d at 654 (Polston, J. dissenting) ("To interpret these provisions any other way effectively eliminates the ability to make joint offers.").

To hold otherwise converts the word "the" in rule 1.442(c)(3) to "an." In other words, the majority's interpretation requires the parties apportion "an amount and terms" attributable to each party, even if the full amount of damages is attributable to both named parties as a unit. That is not a reasonable interpretation of rule 1.442. It forces an interpretation that ignores how the law operates and the context of the claims in which joint offers are tendered, and undermines the statute that it is designed to implement.

### III

Invaliding the proposal here results in an illogical application of law to facts. Because of the way the law operates, it would be

---

4. The Mackensens have not argued their proposal does not qualify as a joint proposal as contemplated by the rule.

impossible to differentiate the damages sought by the Mackensens. Even so, and despite not violating any statutory provision, the majority invalidates the proposal by both strictly construing our rule and expansively applying our precedent interpreting the rule. While I recognize that coherency in the law is a worthy endeavor, I believe our efforts to maintain coherency should be oriented toward the statute, which sets out the substantive right at issue. Our efforts should not target consistency in illogical,[5] impractical,[6] and unworkable[7] case law. We can correct course here, and I would. Therefore, I respectfully dissent.

FRANCIS and TANENBAUM, JJ., concur.

---

[5]. *See, e.g.*, *Pratt*, 161 So. 3d at 1272-73 ("Even where no logical apportionment can be made, it is nonetheless required when more than one offeror or offeree is involved." (citing *Easters v. Russell*, 942 So. 2d 1008, 1009 (Fla. 2d DCA 2006))).

[6]. *See, e.g.*, *Lamb*, 906 So. 2d at 1041 ("It may take some creative drafting to fashion an offer of settlement when one party is only vicariously liable.").

[7]. *See, e.g.*, *Gorka*, 36 So. 3d at 654 (Polston, J., dissenting) (explaining that the majority's ruling "effectively eliminates the ability to make joint offers"); *Atl. Civ., Inc. v. Swift*, 271 So. 3d 21, 26 (Fla. 3d DCA 2018) (explaining that "although expressly permitted under rule 1.442(c)(3), 'joint proposals have become a trap for the wary and unwary alike' under the principle set forth in *Gorka*" (quoting *Pacheco v. Gonzalez*, 254 So. 3d 527, 535 (Fla. 3d DCA 2018))).

Application for Review of the Decision of the District Court of Appeal Direct Conflict of Decisions

Fourth District - Case No. 4D2023-1707

(Indian River County)

Andrew A. Harris of Harris Appeals, P.A., Palm Beach Gardens, Florida; and James Beagle of James Beagle, P.A., Fort Lauderdale, Florida,

for Petitioner

Michael Fox Orr and Loreyn P. Raab of Orr Cook, Jacksonville, Florida; and Michael G. Kissner, Jr. and Savannah J. H. Unruh of Block & Scarpa, Vero Beach, Florida,

for Respondents